UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY G. HENSON,

    Plaintiff,

v.                                             CAUSE NO. 3:22-CV-119 DRL-MGG

ROBERT E. CARTER *et al.*,

    Defendants.

## OPINION AND ORDER

Timothy G. Henson, a prisoner without a lawyer, filed a complaint accompanied by a motion for an emergency injunction to stay his impending prison transfer, which he claims is retaliatory. ECF 1, 2. He then filed an amended complaint (ECF 6), which is now the operative complaint. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Henson alleges he repeatedly filed grievances throughout 2021 and the beginning of 2022, complaining about his lack of access to the law library. He is an inmate in the minimum-security part of Indiana State Prison, located outside the walls of the main facility. It has a separate law library. What he wanted was for prison officials to

improve the conditions at the law library. What he got was a transfer to a different prison, where he presumably will have better access to a law library. Mr. Henson does not want to be transferred and claims this transfer was in retaliation for filing grievances and a lawsuit. It is clear that the transfer is in response to his grievances, but that it was done in retaliation is not a reasonable inference from the facts alleged in the complaint.

In 2019, Mr. Henson filed suit against multiple prison officials for alleged violations of his First Amendment rights. *Henson v. Neal,* No. 3:19-cv-00396-JD-MGG (N.D. Ind. filed May 21, 2019). ECF 6 at 7. While litigating that case, Mr. Henson filed numerous grievances complaining about his access to the prison's law library. ECF 2-1 at 6. He reports that on January 19, 2022, he submitted a request for a blank § 1983 complaint form from the prison law library, in contemplation of filing a lawsuit about the deficiencies in the prison law library. ECF 6 at 9. He alleges that after the law library supervisor learned of his lawsuit plans, she emailed the warden and deputy warden to obtain permission for Mr. Henson to attend additional sessions at the law library to meet deadlines in his 2019 case (additional sessions that Mr. Henson says he did not ask for). ECF 6 at 9-10. Mr. Henson says when he was called to the law library to pick up the § 1983 complaint form, he was told that he was scheduled to attend the law library for an additional session that Friday. ECF 6 at 10. He shares that when he learned he was scheduled for an extra day, he told the law library supervisor that he did not need the time because he did not plan to respond to the pending summary judgment motion in his 2019 case, so had no deadlines to meet. ECF 6 at 10-11. Mr. Henson alleges that the law library supervisor told him that she would contact the warden, assistant warden, and

his unit team manager to let them know he had no further court deadlines or need for additional library time. ECF 6 at 11.

Later that day, Mr. Henson alleges that his case manager informed him at a Classification Hearing that a transfer to Westville Correctional Facility was initiated. ECF 6 at 12. Mr. Henson says his case manager reported at the hearing the reason for the transfer was "for filing grievances and complaints against the law library and prison officials so that he could meet his court ordered deadlines," ECF 6 at 12, but the official reason given on the transfer paperwork was, "Warden has requested transfer for a better law library." ECF 2-2 at 32. Mr. Henson further alleges that his sister called the warden about the transfer and was told that "offenders who file lawsuits and grievances are transferred to other prisons." ECF 6 at 13. Mr. Henson immediately protested the transfer by contacting several prison officials and asking for the transfer to be stopped, but it still went forward. ECF 2-2 at 2-8. He sues (1) Robert E. Carter, the Commissioner of the Indiana Department of Correction, (2) Ron Neal, the Warden at Indiana State Prison, (3) Dawn Buss, the Deputy Warden at Indiana State Prison, (4) Christine Vorrier, his Unit Team Manager, (5) Vanessa Ceuvas, the Classification Supervisor at Indiana State Prison, (6) Ron Blodlovich, a Classification Official at Indiana State Prison, (7) Jack Hendrix, Director of Classification at Indiana Department of Correction's Central Office, and (8) Randy Crawford, a Classification Official at Indiana Department of Correction's Central Office.

Mr. Henson's allegations about the prison transfer do not state a First Amendment retaliation claim. To state a claim for retaliation, a plaintiff must allege "(1) he engaged in

3

activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citation omitted). Here, Mr. Henson has not plausibly alleged the transfer was retaliatory in light of the Warden's stated reason for the transfer or that the transfer qualifies as a deprivation.

The transfer paperwork shows that it was initiated by Mr. Henson's unit team manager on January 19, 2022, ECF 2-2 at 1, most likely after coordinating with the Warden, *see* ECF 2-2 at 32.[1] The stated reason for the transfer was so that Mr. Henson could have access to a "better law library." ECF 2-2 at 32. Though it is clear this recommended transfer was caused by Mr. Henson's protected activity, an action taken in response to a grievance is not retaliatory if it is a "rational, justifiable response to the substance of the prisoner's complaint." *Holleman v. Zatecky*, 951 F.3d 873, 878-79 (7th Cir. 2020). To bring a retaliation claim, Mr. Henson must plausibly allege that the fact of his engagement in protected activity was "a motivating factor of the alleged adverse action, not merely that the *substance* of the plaintiff's complaint motivated a response the plaintiff

---

[1] Mr. Henson claims the other defendants are responsible for not stopping the transfer after he wrote them letters and grievances to stop the transfer. ECF 6 at 18. However, even if the transfer was initiated for retaliatory reasons, that initial decision does not taint the entire process and subject everyone involved in the process to possible liability. *See Wackett v. City of Beaver Dam*, 642 F.3d 578, 582 (7th Cir. 2011) ("For a viable [retaliation] case, Wackett must prove defendants' knowledge of the protected speech to establish retaliation."). The broader an alleged conspiracy extends, the level of plausibility that must be alleged in the complaint goes up. *See Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (noting that "the height of the pleading requirement is relative to circumstances" and the "vast, encompassing conspiracy" the plaintiff alleged required that "before defendants in such a case become entangled in discovery proceedings, the plaintiff must meet a high standard of plausibility").

did not particularly like." *Id.* at 879. The facts known the morning of January 19, 2022, were that (1) Mr. Henson complained repeatedly about inadequate access to the prison's law library; (2) Mr. Henson needed further access to the law library to meet court-ordered deadlines in his 2019 case; and (3) he planned to file another lawsuit, which meant he would continue to require access to the law library. In light of this information, Mr. Henson has not plausibly alleged that the transfer decision was in retaliation for his grievances rather than an attempt to respond to his need for a better law library. Courts grant "significant deference . . . to the Defendant's non-retaliatory justification for the transfer," particularly because of "the Supreme Court's express disapproval of excessive judicial involvement in day-to-day prison management." *Id.* at 880 (quotation marks omitted). The allegation that Mr. Henson rescinded his requests for extra law library time does not allow a reasonable inference that the prison's stated reason for the transfer was disingenuous. He argues that the transfer must have been retaliatory, otherwise he would have been transferred as soon as he first started complaining about his access to the law library. But Mr. Henson fails to address the effect his potential new lawsuit would have on his need for access to the law library. Even if one lawsuit were about to conclude, he would need further law library access to pursue another one.

Moreover, Mr. Henson suggests that *any* prison transfer could constitute a sufficient deprivation for purposes of a First Amendment retaliation claim. Not so, as there is no "blanket rule that *any* transfer motivated by the plaintiff's First Amendment activity is sufficiently adverse to constitute retaliation." *Holleman*, 951 F.3d at 881. When determining whether an action is sufficiently adverse, courts consider "whether the

alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). "This is an objective standard; it does not hinge on the personal experience of the plaintiff." *Holleman*, 951 F.3d at 881.

Transfers to more a more restrictive prison could constitute an adverse action, but the court of appeals has held that a "transfer[] from the general population of one maximum-security facility to the general population of another maximum-security facility" is not an adverse action, particularly because the prisoner there "allege[d] no increase in restrictions imposed on him at [the new facility], other than minor differences in the policies and conditions of the facilities." *Id.*; *see also Douglas v. Reeves,* 964 F.3d 643, 646 (7th Cir. 2020) ("[A] a transfer from one prison to another, on its own, without some additional aggravating factor, such as relocation to a much more restrictive or dangerous environment, is not likely to deter protected activity" (quotation marks and brackets removed)).

Here, the only information surrounding the circumstances in the change of facility is found in Mr. Henson's memorandum in support of the preliminary injunction. ECF 2-1. In it, Mr. Henson explains that he is classified as a low level (1-R) security offender, and he would be transferred to a low-level security unit (R-dormitory) at Westville. ECF 2-1 at 20. Mr. Henson alleges that there is no law library specific to this unit, unlike in Indiana State Prison where there is a law library for the minimum-security offenders, separate from the law library inside the main facility. ECF 2-1 at 20. He says at Westville he will have to share the law library with higher security level offenders. ECF 2-1 at 20.

6

Mr. Henson speculates that this might be dangerous or that he will have even less time in the law library because he will have to share it with more inmates. ECF 2-1 at 21. This speculation is not enough to establish an adverse action. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law."). Additionally, Westville's *one* law library will address Mr. Henson's repeated complaints that Indiana State Prison did not have enough employees to fully staff *two* law libraries, resulting in the minimum-security library being closed frequently. ECF 2-2 at 13-14. Mr. Henson may not proceed on a First Amendment retaliation claim.

Mr. Henson also complains that the law library supervisor impermissibly read a court order sent to him in the course of his 2019 litigation. He participates in the court's e-filing program, in which court orders are sent electronically to the prison to be printed and distributed to the inmates. ECF 6 at 7. Mr. Henson alleges that, without his consent or knowledge, the law library supervisor examined, read, and copied a court order setting new response deadlines for summary judgment briefing in his 2019 case, and, on her own initiative, scheduled him for additional time at the law library in order to meet those deadlines. ECF 6 at 9. He alleges these actions violated his right to have "legal mail" opened in his presence and not read by prison officials. He asserts this provides prison officials an unfair advantage in the litigation.

Publicly filed court orders are not entitled to heightened constitutional protection in prisons. Constitutionally protected legal mail is defined as letters that are marked with

7

an attorney's name and that provide a warning that the letter is legal mail. *Kaufman v. McCaughtry,* 419 F.3d 678, 686 (7th Cir. 2005). Otherwise, prisons are permitted to open and inspect mail as needed to ensure it does not contain contraband. *Id.* at 685-86. Communications from the court addressed to an inmate are deemed public, so are not entitled to the same constitutional protections as communication with an attorney. *See Guajardo-Palma v. Martinson,* 622 F.3d 801, 804 (7th Cir. 2010) (holding prison officials have a right to read communications from courts and agencies). The prison has chosen to include court orders in its definition of "legal mail" and granted them the same heightened protection as attorney mail. *See* Policy and Administrative Procedure 02-01-103, Offender Correspondence, effective date Mar. 15, 2021, available at https://www.in.gov/idoc/files/02-01-103-Off-Corr-3-15-2021.pdf (last visited Mar. 8, 2022). But that does not bestow court orders with special constitutional protections. Violations of prison regulations alone don't violate the Constitution. *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003). Therefore, while the decision to read the court order outside of Mr. Henson's presence may have violated prison regulations, it did not violate any constitutional right.

Finally, Mr. Henson moves for a preliminary injunction to stop the transfer. ECF 2. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because the complaint

does not currently state a claim, Mr. Henson has no chance of success on the merits. The request for a preliminary injunction must therefore be denied.

This complaint does not state a claim for which relief can be granted. Nevertheless, Mr. Henson may file an amended complaint regarding his allegations of a retaliatory prison transfer if he believes he can state a claim based on (and consistent with) the events described in this complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. After he properly completes that form addressing the issues raised in this order, he needs to send it to the court.

Additionally, Mr. Henson must resolve his filing fee status. He neither paid the filing fee nor filed for leave to proceed *in forma pauperis*. If he wants to continue this lawsuit, he must either pay the filing fee or file an in forma pauperis motion with a copy of his inmate trust fund ledger detailing his transactions for the past six months. Mr. Henson submitted a copy of a request for remittance, suggesting that he instructed to prison to send $350 to the court for the filing fee (which has not been received yet). ECF 3. However, the filing fee for a prisoner not proceeding *in forma pauperis* is $402,[2] so a $350 payment alone will not satisfy the filing fee requirement.

---

[2] Pursuant to 28 U.S.C. § 1914, "The clerk of each district court shall require the parties instituting any civil action . . . to pay a filing fee of $350 [and] shall collect from the parties such additional

For these reasons, the court:

(1) DENIES the motion (ECF 2);

(2) GRANTS Timothy G. Henson until **April 12, 2022**, to file an amended complaint and resolve his filing fee status;

(3) CAUTIONS Timothy G. Henson if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current filing does not state a claim for which relief can be granted; and

(4) CAUTIONS Timothy G. Henson that even if the case is dismissed, he will still have to pay the filing fee over time through automatic deductions from his prison trust fund account.

SO ORDERED.

March 14, 2022                                    *s/ Damon R. Leichty*
                                                  Judge, United States District Court

---

fees only as are prescribed by the Judicial Conference of the United States." The Judicial Conference has established an "Administrative fee for filing a civil action, suit, or proceeding in a district court [of] $52 [which] does not apply to . . . persons granted in forma pauperis status under 28 U.S.C. § 1915." http://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule