UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY G. HENSON,

Plaintiff,

v.                                                    CAUSE NO. 3:22-CV-119-DRL-MGG

ROBERT E. CARTER *et al.*,

Defendants.

OPINION AND ORDER

Timothy G. Henson, a prisoner without a lawyer, was given the opportunity to file an amended complaint to avoid dismissal of this case after the court determined his first complaint did not state a claim for relief. ECF 7. In response, he filed a motion to file an amended complaint along with a proposed amended complaint, ECF 14, as well as a renewed motion for a preliminary injunction, ECF 15. The court will now review the merits of the proposed amended complaint as required by 28 U.S.C. § 1915A for all prisoner complaints and dismiss the case if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Henson is fighting to stop a transfer from Indiana State Prison (ISP) to Westville Correctional Facility that was initiated on January 19, 2022. He alleges the

transfer is in retaliation for his protected First Amendment activity. Specifically, he points

to a 2019 lawsuit he filed, alleging that he was fired from his job as a law library clerk in

retaliation for filing grievances and organizing external protests about prison conditions.

*Henson v. Neal*, No. 3:19-cv-396-JD (N.D. Ind. filed May 21, 2019). He also attaches a July

2021 grievance complaining about a day when the law library was closed because the law

library supervisor was needed to help pass out commissary elsewhere because of a staff

shortage. ECF 9-1 at 9. He provides a grievance filed November 2, 2021, complaining

about an alleged violation of Indiana Department of Correction's (IDOC) anti-nepotism

rules because his unit team manager supervises her brother, a member of the custody

staff. ECF 9-1 at 19. Finally, he points to a letter to the warden dated December 8, 2021,

complaining about a recent notification that the law library in the minimum-security unit

would be closed on Tuesdays and Thursday because the law library supervisor was

needed to staff the law library at the maximum-security unit on those days due to a lack

of staffing. ECF 9-1 at 13-18. The letter raised other issues, including how inadequate

staffing makes the unit unsafe and takes away outdoor recreation time, as well as

complaining about the nepotism of his unit team manager, and inadequate laundry and

showers. *Id.*

But what seemingly triggered the action to transfer him was his request for a blank

civil rights complaint form from the law library on January 19, 2022. He alleges that after

the law library supervisor learned of the request, she informed the defendants that Mr.

Henson might file a new lawsuit and would need more time in the law library.[1] ECF 14-1 at 5. Later that same day his unit team manager initiated the transfer. ECF 15-2 at 1. Also that same day, Mr. Henson's caseworker held the classification hearing and approved the transfer over Mr. Henson's objection. *Id.*

Mr. Henson immediately protested the transfer request to the classification supervisor and filed a grievance about it. In his written objection to the classification supervisor, he stated he was told his "Unit Team Manager requested a transfer to Westville Correctional Facility in order to have more access to the law library to meet court ordered deadlines" but that he did not need additional time in the law library, so the transfer was not needed. ECF 15-2 at 3. In the grievance, also filed the same day, he stated that he was told "a transfer to the Westville Correctional Facility was needed in order for me to meet court ordered deadlines," but he explained that he had no more deadlines and the transfer was unnecessary. ECF 2-2 at 3. The internal transfer paperwork did not state a reason for the transfer. ECF 15-2 at 1. But the reason given on the transfer paperwork for approval from the central office was so that Mr. Henson could have access to a "better law library." ECF 2-2 at 32.

In the initial screening order, the court expressed skepticism that Mr. Henson could show the transfer was retaliatory rather than an attempt to address Mr. Henson's complaints about the law library:

---

[1] In Mr. Henson's first complaint, he alleges that the clerk told the law library supervisor that Mr. Henson wanted the form because he was considering filing a lawsuit about the law library. ECF 6 at 9. In the new amended complaint, Mr. Henson denies stating that he planned to file a lawsuit against the law library. ECF 14-1 at 5. The subject of the potential lawsuit makes no difference to the outcome here; regardless of the topic, any new lawsuit would require time in the law library.

> Though it is clear this recommended transfer was caused by Mr. Henson's protected activity, an action taken in response to a grievance is not retaliatory if it is a "rational, justifiable response to the substance of the prisoner's complaint." *Holleman v. Zatecky,* 951 F.3d 873, 878-79 (7th Cir. 2020). To bring a retaliation claim, Mr. Henson must plausibly allege that the fact of his engagement in protected activity was "a motivating factor of the alleged adverse action, not merely that the *substance* of the plaintiff's complaint motivated a response the plaintiff did not particularly like." *Id.* at 879.

ECF 7 at 4-5. In the amended complaint, Mr. Henson attempts to establish that the transfer decision was motivated by the fact that he complained by (1) citing statements made by prison officials to imply the transfer was retaliatory and (2) suggesting that the stated reason for the transfer is pretextual because the law library at Westville is not better than the law library at ISP.

Regarding the statements from prison officials, he now alleges that his caseworker told him during the classification hearing "he was being transferred to the Westville Correctional Facility for filing a previous lawsuit against State Defendant Neal, seeking a redress of grievances against prison officials, and that he had intentions on filing another lawsuit against prison officials and the law library, and requested additional time to attend the law library to do so." ECF 14-1 at 6. Additionally, he alleges his sister contacted both the Warden and the IDOC Commissioner in an attempt to stop the transfer and both told her that "offenders like the Plaintiff who file lawsuits and grievances against prison officials are transferred to other prisons, and after a lot of grievances are filed against prison officials at a particular prison an investigation by central office is conducted into problems within that prison which could be damaging to prison officials and their jobs." ECF 14-1 at 8. Mr. Henson alleges the Commissioner told his sister that "Plaintiff was a 'problem child' for the Indiana Department of Correction." *Id.*

Regarding the law library at Westville, Mr. Henson contends it is not as good as the law library he has access to in the minimum-security unit at ISP. The minimum-security unit at ISP has its own law library onsite. ECF 14-1 at 11. But at Westville, he alleges the physical law library is located in a higher-security level unit, so he would not have daily access to legal books or have a law library supervisor in his unit every day. *Id.* For daily research, he would be forced to rely on his tablet, which could break or be unable to be charged if his unit loses power. *Id.* He says there are fewer computers available to share among more inmates, and because there is no law library supervisor onsite, he worries there will be delays in requesting copies. *Id.* He contends the law library at Westville's R-Dormitory is a "satellite" law library, and his access to the courts will be impaired. *Id.* at 11-12.

The court considers Mr. Henson's complaint in light of the significant deference federal courts owe to prison official's stated reasons for transfers. "[T]he retaliation inquiry should be undertaken in light of the 'general tenor' of *Sandin* [*v. Conner*, 515 U.S. 471 (1995)], which specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management. [Courts] should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (quotation marks, citations, and brackets omitted). The timing here strongly suggests that the defendants' actions here were in response to Mr. Henson's contemplating filing a new lawsuit. Filing a new lawsuit, regardless of the topic, will require time in the law library, a law library that Mr. Henson repeatedly complained was inadequate.

Even if the defendants' actions could be considered retaliatory, Mr. Henson does not address the court's other basis for concluding the complaint did not state a claim. The court determined the complaint did not plausibly allege the transfer constituted an adverse action:

> Transfers to more a more restrictive prison could constitute an adverse action, but the court of appeals has held that a "transfer[] from the general population of one maximum-security facility to the general population of another maximum-security facility" is not an adverse action, particularly because the prisoner there "allege[d] no increase in restrictions imposed on him at [the new facility], other than minor differences in the policies and conditions of the facilities." *Id.*; *see also Douglas v. Reeves,* 964 F.3d 643, 646 (7th Cir. 2020) ("[A] transfer from one prison to another, on its own, without some additional aggravating factor, such as relocation to a much more restrictive or dangerous environment, is not likely to deter protected activity" (quotation marks and brackets removed)).

ECF 7 at 6. Mr. Henson acknowledges that he will maintain his status as a low-level security offender and will be housed in the low-level security unit (R-dormitory) at Westville. ECF 2-1 at 20. He focuses on the differences in the law libraries between the two facilities, but this does not help him show the transfer constitutes an adverse action.

When determining whether an action is sufficiently adverse, courts consider "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). "This is an objective standard; it does not hinge on the personal experience of the plaintiff." *Holleman v. Zatecky*, 951 F.3d 873, 881 (7th Cir. 2020). Thus, Mr. Henson's unhappiness with the law library at Westville does not establish that the transfer is objectively deterrent to a prisoner of ordinary firmness. "[T]he harsh realities of a prison environment affect our consideration of what actions are sufficiently adverse. 'Prisoners may be required to tolerate more than public employees, who may be required

to tolerate more than average citizens, before an action taken against them is considered adverse.'" *Id.* at 880-81 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). The only difference between the two facilities Mr. Henson alleges is the differences in the law libraries. Although he fears the changes will be detrimental to him, his particular desire for certain law library access is not an objective basis to find the transfer could be considered an adverse action.

Although Mr. Henson is unhappy with the impending transfer and thinks it is unfair, the circumstances surrounding the transfer do not fit within the bounds of a First Amendment claim. Thus, the preliminary injunction must be denied. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because the complaint does not currently state a claim, Mr. Henson has no chance of success on the merits.

Finally, Mr. Henson filed a motion for status update, asking that the court expedite its ruling to screen his amended complaint and decide his renewed motion for a preliminary injunction. ECF 18. Such a motion is unnecessary. It appears as though Mr. Henson believes that his filings should receive immediate attention, superior to all other matters before the court. Certainly, this case is important, but all cases filed in this court are important. This is not the only case pending before this court. It takes time to review and rule on each filing accurately. Doing that is delayed by unnecessary motions like this one.

For these reasons, the court:

(1) DENIES the motion for leave to file an amended complaint (ECF 14), the renewed motion for a preliminary injunction (ECF 15), and the motion for status update (ECF 18); and

(2) DISMISSES this case under 28 U.S.C. § 1915A for failure to state a claim.

SO ORDERED.

June 14, 2022                                        _s/ Damon R. Leichty_
                                                     Judge, United States District Court