UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY G. HENSON, <br><br>  Plaintiff, <br><br>  v. <br><br> RON NEAL, CHRISTINE VORRIER, and VANESSA CEUVAS, <br><br>  Defendants. | CAUSE NO. 3:22-CV-119-DRL-MGG |

OPINION AND ORDER

Timothy G. Henson, a prisoner without a lawyer, filed a motion under Federal Rule of Civil Procedure Rule 59(e), challenging the dismissal of his case at screening for failure to state a claim.[1] ECF 22, 25. He initially filed this case against three officials at the Indiana State Prison and three officials at the Indiana Department of Correction's Central Office, alleging that he was being transferred to Westville Correctional Facility in retaliation for filing grievances and lawsuits. To state a claim for retaliation, a plaintiff must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation

---

[1] Mr. Henson's timely Rule 59(e) motion was unsigned (though he signed the certificate of service following the motion). ECF 22. The court gave him the opportunity to submit a signed copy of the motion, which he did. ECF 23, 25. Therefore, the court will consider the motion to be filed as of the date of the unsigned motion.

marks and citation omitted). The court determined that Mr. Henson did not plausibly allege the second or third element of the claim and dismissed the action.

"Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). Mr. Henson argues there was a manifest error of law when the court did not consider whether the prison officials could have had more than one motive for the transfer and in concluding the transfer to Westville with an inferior law library was not adverse as a matter of law.

The court summarized the facts in the first screening order:

> In 2019, Mr. Henson filed suit against multiple prison officials for alleged violations of his First Amendment rights. *Henson v. Neal*, No. 3:19-cv-00396-JD-MGG (N.D. Ind. filed May 21, 2019). ECF 6 at 7. While litigating that case, Mr. Henson filed numerous grievances complaining about his access to the prison's law library. ECF 2-1 at 6. He reports that on January 19, 2022, he submitted a request for a blank § 1983 complaint form from the prison law library, in contemplation of filing a lawsuit about the deficiencies in the prison law library. ECF 6 at 9. He alleges that after the law library supervisor learned of his lawsuit plans, she emailed the warden and deputy warden to obtain permission for Mr. Henson to attend additional sessions at the law library to meet deadlines in his 2019 case (additional sessions that Mr. Henson says he did not ask for). ECF 6 at 9-10. Mr. Henson says when he was called to the law library to pick up the § 1983 complaint form, he was told that he was scheduled to attend the law library for an additional session that Friday. ECF 6 at 10. He shares that when he learned he was scheduled for an extra day, he told the law library supervisor that he did not need the time because he did not plan to respond to the pending summary judgment motion in his 2019 case, so had no deadlines to meet. ECF 6 at 10-11. Mr. Henson alleges that the law library supervisor told him that she would contact the warden, assistant warden, and his unit team manager to let them know he had no further court deadlines or need for additional library time. ECF 6 at 11.
>
> Later that day, Mr. Henson alleges that his case manager informed him at a Classification Hearing that a transfer to Westville Correctional

> Facility was initiated. ECF 6 at 12. Mr. Henson says his case manager reported at the hearing the reason for the transfer was "for filing grievances and complaints against the law library and prison officials so that he could meet his court ordered deadlines," ECF 6 at 12, but the official reason given on the transfer paperwork was, "Warden has requested transfer for a better law library." ECF 2-2 at 32. Mr. Henson further alleges that his sister called the warden about the transfer and was told that "offenders who file lawsuits and grievances are transferred to other prisons." ECF 6 at 13. Mr. Henson immediately protested the transfer by contacting several prison officials and asking for the transfer to be stopped, but it still went forward. ECF 2-2 at 2-8.

ECF 7 at 2-3.

The court determined that Mr. Henson's allegations did not state a First Amendment retaliation claim because he did not plausibly allege the transfer was retaliatory in light of the warden's stated reason for the transfer or that the transfer qualified as a deprivation for First Amendment purposes. ECF 7 at 4. Mr. Henson filed an amended complaint, dropping the Central Office defendants but continuing against the ISP officials, Warden Ron Neal, Classification Supervisor Vanessa Ceuvas, and Unit Team Manager Christine Vorrier. ECF 14-1. The court determined the amended complaint did not cure the deficiencies identified in the screening order and dismissed the case. ECF 20. Mr. Henson contests that decision.

The first issue to consider is whether the court erred in concluding that Mr. Henson did not plausibly allege causation. The court determined that the reasoning given on the paperwork sent to the Central Office was determinative:

> The stated reason for the transfer was so that Mr. Henson could have access to a "better law library." ECF 2-2 at 32. Though it is clear this recommended transfer was caused by Mr. Henson's protected activity, an action taken in response to a grievance is not retaliatory if it is a "rational, justifiable response to the substance of the prisoner's complaint." *Holleman v. Zatecky*,

3

> 951 F.3d 873, 878-79 (7th Cir. 2020). To bring a retaliation claim, Mr. Henson must plausibly allege that the fact of his engagement in protected activity was "a motivating factor of the alleged adverse action, not merely that the *substance* of the plaintiff's complaint motivated a response the plaintiff did not particularly like." *Id.* at 879.

ECF 7 at 4-5. In his motion, Mr. Henson points out that this rationale was given on the paperwork to Central Office. ECF 25 at 2, 8. But the internal paperwork did not give a reason. The internal paperwork shows that Unit Team Manager Vorrier initiated the request for a transfer on January 19, 2022, and his Unit Team Manager Cuevas approved it on January 26, 2022, but there was no reason stated. ECF 15-2 at 1. Further, his amended complaint alleges that his caseworker told him:

> that he was being transferred to the Westville Correctional Facility for filing a previous lawsuit against State Defendant Neal, seeking a redress of grievances against prison officials, and that he had intentions on filing another lawsuit against prison officials and the law library, and requested additional time to attend the law library to do so.

ECF 14-1 at 6. Mr. Henson argues that the court erred in ascribing the "better law library" rationale to internal transfer decision at ISP because that rationale was not apparent until the transfer paperwork to Central Office was completed. While further factual development may or may not support Mr. Henson's assertion that there is a causal link between his First Amendment activity and the transfer decision, the court concludes that his allegations are sufficient as to causation at the pleading stage.

The next issue to consider is whether the court erred in concluding that Mr. Henson did not plausibly allege that the prison transfer constituted a sufficient deprivation for First Amendment retaliation purposes. Undergirding this determination is case law that holds a prison transfer alone is not an adverse action; instead the plaintiff

4

must establish that the transfer will result in changed circumstances that themselves qualify as a deprivation that would deter a person of ordinary firmness from future First Amendment activity:

> [T]he disruption inherent in a transfer to a different facility does not by itself make the transfer adverse. Without some additional aggravating factor, such as relocation to a much more restrictive or dangerous environment, a transfer is not likely to deter a person of ordinary firmness from continuing to engage in protected conduct.

*Holleman v. Zatecky*, 951 F.3d 873, 882 (7th Cir. 2020); *see also Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) ("We have repeatedly held that transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." (collecting cases) (quotation marks omitted)).

Here, Mr. Henson argues that the law library he would have access to at Westville is inferior to the one at ISP, and this constitutes an adverse action. Specifically, the amended complaint alleged that there is no physical library present in the minimum-security unit, unlike at ISP, where the minimum-security unit has its own physical law library with a law library supervisor on-site Monday through Friday. ECF 14-1 at 10-12. At Westville, he will have less access to a computer, will have to rely on his tablet for legal research instead of books, and will experience delays in receiving and filing court orders because of the extra time needed to send them to the law library through the prison mail system. *Id.*

The court accepts as true that the law library at Westville is inferior to the law library at ISP. The court thus considers whether the changes in the law library that Mr.

Henson alleges could conceivably constitute an adverse action—in other words, whether it would deter a person of ordinary firmness from future First Amendment activity to have to use a tablet over books for legal research, to have to handwrite documents instead of typing, to have to store paper copies of legal documents in their cell instead of on a computer, and to incur extra delays in filing and receiving court documents.

This case seemingly falls squarely in the situation described in *Holleman*:

> . . . Holleman was transferred from the general population of one maximum-security facility to the general population of another maximum-security facility. The Defendants did not transfer him into, or delay transferring him out of, a life-threatening situation. Holleman alleges no increase in restrictions imposed on him at Wabash Valley, other than minor differences in the policies and conditions of the facilities. The changes in circumstance he does allege—less law library time, being made to share a cell, and having to witness more violence—do not transform the transfer into an adverse action because *there is no evidence the Defendants knew the transfer would result in these incidental changed conditions*. Regarding increased violence, Holleman alleges only 25 percent of the violence at Wabash Valley is reported. He also provides no evidence of the amount or kind of reported violence at Pendleton for us to be able to compare the two.

*Holleman v. Zatecky*, 951 F.3d 873, 881 (7th Cir. 2020) (emphasis added). However, the court overlooked the possibility mentioned in *Holleman* that the defendants knew the law library at Westville was inferior and transferred him there to thwart his litigation. Therefore, Mr. Henson will have the opportunity to proceed past the pleading stage on this claim.

The court will thus grant the motion to reconsider, reopen the case, and allow the claims to go forward against Warden Neal, Unit Team Manager Ceuvas, and Classification Supervisor Vorrier. The amended complaint plausibly alleges that Mr. Henson engaged in protected First Amendment activity when he filed lawsuits and

grievances about prison conditions; that his activity motivated Warden Ron Neal, Unit Team Manager Christine Vorrier, and Classification Supervisor Vanessa Ceuvas to transfer Mr. Henson to Westville, which has an inferior law library; and that a transfer to a facility with an inferior law library constitutes a deprivation that could deter future First Amendment activity. Therefore, he may proceed on a claim for damages against these defendants.

Moreover, Mr. Henson seeks an injunction to stop the transfer, which has not yet occurred. Warden Ron Neal in his official capacity has both the authority and the responsibility to ensure that unconstitutional practices are stopped. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore he may proceed on a claim for permanent injunctive relief against the Warden in his official capacity to obtain constitutionally adequate treatment.

Mr. Henson filed an additional motion titled "Plaintiff's Rule 59(e) Motion for Relief from Judgment." ECF 24. Because this motion was filed more than 28 days after the judgment was entered, it would have to be considered under the more stringent standards of Federal Rule of Civil Procedure 60(b). *See Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 666 (7th Cir. 2014). But because the court is granting his timely Rule 59(e) motion, there is no need to consider whether the arguments in the motion meet that standard, and the motion will be denied as moot.

For these reasons, the court:

(1) GRANTS the Rule 59(e) motion (ECF 22, 25);

(2) VACATES the judgment dismissing the case (ECF 21);

7

(3) DIRECTS the clerk to separately docket the proposed amended complaint (ECF 14-1) as an amended complaint;

(4) DENIES the untimely Rule 59(e) motion (ECF 24);

(5) GRANTS Timothy G. Henson leave to proceed against Ron Neal, Christine Vorrier, and Vanessa Ceuvas in their individual capacities for compensatory and punitive damages for arranging to transfer him to a facility with an inferior law library in retaliation for filing lawsuits and grievances in violation of the First Amendment;

(6) GRANTS Timothy G. Henson leave to proceed against Warden Ron Neal in his official capacity for permanent injunctive relief to prevent the prison transfer to Westville in violation of the First Amendment;

(7) DISMISSES all other claims;

(8) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Ron Neal, Christine Vorrier, and Vanessa Ceuvas at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 14-1);

(9) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(10) ORDERS, under 42 U.S.C. § 1997e(g)(2), Ron Neal, Christine Vorrier, and Vanessa Ceuvas to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

October 4, 2022 	*s/ Damon R. Leichty*
	Judge, United States District Court