UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY G. HENSON,

    Plaintiff,

v.      CAUSE NO. 3:22-CV-00119-DRL

RON NEAL *et al.*,

    Defendants.

## OPINION AND ORDER

Timothy G. Henson, a prisoner without a lawyer, is proceeding in this case on two claims: (1) against Warden Ron Neal, Unit Team Manager Christine Vorrier, and Classification Specialist Vanessa Cuevas "in their individual capacities for compensatory and punitive damages for arranging to transfer him to a facility with an inferior law library in retaliation for filing lawsuits and grievances in violation of the First Amendment;" and (2) against Warden Neal "in his official capacity for permanent injunctive relief to prevent the prison transfer to Westville in violation of the First Amendment[.]" ECF 26 at 8. The defendants filed a motion for summary judgment. ECF 88. Mr. Henson filed a motion in opposition, along with motions to supplement and amend that motion. ECF 134, ECF 136, ECF 137. The defendants filed a reply. ECF 139.[1]

---

[1] The defendants filed a motion for an extension of time to file a reply and subsequently filed their reply. ECF 138; ECF 139. The court grants the motion for an extension (ECF 138) and accepts the defendants' reply as timely.

Mr. Henson then filed an unauthorized sur-response. ECF 141. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

The defendants offer evidence that, on December 8, 2021, Mr. Henson wrote a letter to Warden Neal asserting he was unable to meet his court-ordered deadlines because he was not given adequate time in the law library. ECF 44-3. Specifically, Mr. Henson alleged the law library at Indiana State Prison (ISP) was inadequate and he needed to visit the law library more than once a week to meet his deadlines. *Id.*

A copy of Mr. Henson's letter was forwarded to Anna Quick, General Counsel for the Indiana Department of Correction. ECF 88-1 at 1. Ms. Quick sent an email to Warden Neal instructing him to make sure to address all of Mr. Henson's complaints in the letter as far as possible. *Id.* at 1-2; ECF 88-2 at 2-3. She asked Warden Neal to ensure Mr. Henson

2

had adequate time in the law library to meet an upcoming deadline for a summary judgment response. *Id.* at 2. Warden Neal asked Ms. Quick if one day per week was enough, noting that staffing issues prevented him from allowing each dorm more than one day in the law library per week. *Id.* at 1. Ms. Quick responded that one day per week would typically be enough, but more time may be needed if an inmate has an upcoming court deadline. *Id.* Warden Neal then sent an email to several IDOC employees instructing them that if Mr. Henson asked for additional time in the law library, he should be accommodated. ECF 88-4.

Unit Team Manager Vorrier, the Unit Team Manager of Mr. Henson's dorm, received both the email from Warden Neal and Mr. Henson's December 8 letter to Warden Neal. ECF 88-5 at 1. At the time, ISP's law library was chronically understaffed, and each housing unit was only allowed to use the law library one day per week. *Id.* at 2. In response, Unit Team Manager Vorrier wrote a memorandum to ISP's Classification Department requesting Mr. Henson be transferred to Westville Correctional Facility (WCF) due to his "need to use the law library more consistently." *Id.* at 2-3; ECF 88-6. Because WCF was not having the same staffing issues as ISP, Unit Team Manager Vorrier believed Mr. Henson would have been able to access the law library more frequently at WCF. *Id.*

On January 19, 2022, Classification Specialist Cuevas, a Release Assistant in ISP's Classification Department, received and read Unit Team Manager Vorrier's memorandum. ECF 88-7 at 1. Classification Specialist Cuevas determined there was good cause for transferring Mr. Henson to WCF so he could have more time in the law library.

3

*Id.* at 2. She was aware of the staffing shortages at ISP, and agreed that Mr. Henson would likely get more time at the law library at WCF. *Id.* Accordingly, she initiated proceedings to transfer Mr. Henson to WCF. *Id.* The contemplated transfer did not involve any change to Mr. Henson's classification or housing status. *Id.* at 3.

On January 26, 2022, a classification hearing was held to consider Mr. Henson's contemplated transfer to WCF. ECF 88-9. Mr. Henson's transfer to WCF was approved by Classification Specialist Cuevas and a non-party Superintendent of Classification. *Id.* On February 8, 2022, Mr. Henson appealed the transfer decision. ECF 88-10 at 2. On March 15, 2022, Mr. Henson's appeal was granted and his transfer to WCF was canceled. *Id.* at 1.

The defendants provide an affidavit from John Hicks, the Litigation Liaison and Tort Claims Investigator at WCF, who attests that WCF houses primarily medium and minimum-security individuals, many of whom are close to release and have jobs outside of the facility or are enrolled in college courses. ECF 105-6 at 1. The vast majority of inmates at WCF are in special programs where they work full time jobs in or outside the facility, are enrolled in college or vocational courses, or are in specialized therapy programs. *Id.* The R-dorm at WCF doesn't have doors and inmates are allowed to move about during all waking hours. *Id.* at 2. Most of the residents of R-dorm are not on the unit during the day because they have jobs elsewhere. *Id.* Residents of R-dorm are allowed to move about the dorm freely most of the day and have access to law library computers, telephones, and recreational items. *Id.* Each level of R-dorm has a computer that inmates can access at any time between 4:30 a.m. to 11:00 p.m. Sunday through

4

Thursday and 4:30 a.m. to 1:00 a.m. Friday and Saturday. *Id.* Moreover, inmates can access the same computer resources at any time from their tablets. *Id.* They can obtain hard copies of cases, laws, and other legal documents by printing the documents from LexisNexis at any time and the documents will be delivered to them within a day or two via facility mail. *Id.* Additionally, inmates can go in person to use printers and copiers once per week for this purpose. *Id.* Inmates can e-file their court documents or request copies at any time by sending the documents to be filed or copied to the law library via computer, tablet, or facility mail. *Id.* A transfer from ISP to WCF in January 2022 would have afforded Mr. Henson more time accessing law-library resources. *Id.* at 3. Because neither party disputes this evidence, the court accepts it as undisputed.

To prevail on a First Amendment retaliation claim, Mr. Henson must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The defendants concede Mr. Henson engaged in activity protected by the First Amendment, but argue he didn't suffer any adverse action that would likely deter First Amendment activity in the future. To satisfy this second prong, Mr. Henson must offer evidence he suffered a deprivation that would "deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (*quoting Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an

5

action taken against them is considered adverse." *Id.* at 648 (*quoting Holleman v. Zatecky*, 951 F.3d 873, 880-81 (7th Cir. 2020)).

A prison transfer can constitute an adverse action for First Amendment purposes only if it results in "serious changes of circumstance that would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Holleman*, 951 F.3d at 881. For example, transfer decisions may be retaliatory when the transfer (1) keeps the inmate in a life-threatening housing situation, (2) moves the inmate from general population into segregated housing with substantial restrictions on his freedom, or (3) moves the plaintiff from a minimum-security facility to a maximum-security facility. *Id.* Conversely, merely transferring an inmate from the general population of one maximum-security facility to the general population of another maximum-security facility did not constitute an adverse action where it resulted in only minor changes to the inmate's circumstances, including less law library time, being made to share a cell, and having to witness more violence. *Id.*

Here, there is no evidence by which a reasonable jury could conclude the attempt to transfer Mr. Henson from ISP to WCF constituted an adverse action that would likely deter First Amendment activity in the future. Specifically, the defendants provide undisputed evidence the proposed transfer to WCF would have improved Mr. Henson's circumstances by providing him more time to access law library materials, as he would have gained daily access to law library materials via the computer and tablet as opposed to the once-per-week access offered at ISP. Additionally, the defendants provide

6

undisputed evidence the proposed transfer wouldn't have resulted in any negative change to Mr. Henson's classification or housing status.

In response, Mr. Henson offers only his own speculation the proposed transfer would have negatively impacted his ability to access law library materials. Specifically, he raises several arguments. ECF 137-2 at 13. First, Mr. Henson argues that, unlike ISP, WCF doesn't have a physical law library or any physical legal books and materials. *Id.* But he provides no evidence the electronic legal materials available at WCF are inferior to the physical legal materials available at ISP. Next, he argues he would be forced to share a computer with 80 other inmates at WCF which may result in conflict. *Id.* But the defendants provide undisputed evidence inmates at WCF can access the computer from at least 4:30 a.m. until 11:00 p.m. each day, the majority of inmates are not present in the dorm throughout the day, and inmates can access the same materials via their tablets. Mr. Henson's belief he may have conflict with other inmates at WCF over computer access is entirely speculative. Next, Mr. Henson argues WCF has no "capability to receive his legal documents printed out and electronically filed or mailed the same day to the courts." *Id.* But he provides no evidence disputing Mr. Hicks' attestation that inmates at WCF can e-file their court documents or request copies by sending the documents to the law library via computer or tablet. Lastly, Mr. Henson argues WCF (1) has no on-site law library supervisor or clerks to assist in legal matters; (2) has no "capability to computer generate his legal documents to be more presentable to the courts;" (3) has no "capability to store his legal files on computer, thus decreasing the need for paper storage of documents;" (4) has a less current version of LexisNexis than ISP; and (5) sometimes

experiences delays in providing legal documents to inmates, causing them to miss filing deadlines. *Id.*; ECF 134-2 at 59-60. But these minor changes in circumstances are insufficient to constitute an adverse action, as they would not "deter a person of ordinary firmness from continuing to engage in protected activity." *See Holleman*, 951 F.3d at 881.

In summary, the record contains no evidence the proposed transfer from ISP to WCF would have resulted in "serious changes of circumstance that would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Holleman*, 951 F.3d at 881. Summary judgment is thus warranted in favor of the defendants on this claim.[2]

Mr. Henson is also proceeding against Warden Neal "for permanent injunctive relief to prevent the prison transfer to Westville in violation of the First Amendment." Warden Neal attests that "Mr. Henson has not been transferred from Indiana State Prison and no transfer is currently contemplated." ECF 105-2 at 2. It is undisputed Mr. Henson successfully appealed his transfer to WCF, and he adduces no evidence there are any ongoing efforts to have him transferred. Mr. Henson's request for an injunction to prevent his transfer to WCF is now moot. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Summary judgment is warranted in favor of Warden Neal on this claim.

For these reasons, the court:

(1) GRANTS Mr. Henson's motion to supplement his affidavit (ECF 136);

---

[2] Because the court concludes Mr. Henson has not presented evidence of an adverse action, it does not reach the defendants' alternate arguments that Mr. Henson has not shown causality and they are entitled to qualified immunity.

(2) GRANTS Mr. Henson's motion to amend his motion in opposition to the defendants' summary judgment motion (ECF 137);

(3) GRANTS the defendants' motion for an extension of time to file a reply (ECF 138);

(4) GRANTS the defendants' motion for summary judgment (ECF 88);

(5) DENIES Mr. Henson's motion in opposition to the defendants' summary judgment motion (ECF 134); and

(6) DIRECTS the clerk to enter judgment in favor of the defendants and against Timothy G. Henson and to close this case.

SO ORDERED.

July 3, 2024 *s/ Damon R. Leichty*
Judge, United States District Court